The UNITED STATES of America

v.

Donald BENJAMIN, Jr., a/k/a Ducky, Neal Benjamin, Jeffrey Evans, Ronald Wilson, a/k/a Big Ron, Edward Ingenito, a/k/a Buster, Joseph Scicchitano, a/k/a J.D., Carlos Wiggins, a/k/a Los, Jeff Bellamy, John Bryant, a/k/a J.B., Sherry Marie Boula, Omar T. Ferguson, Jamie Friel, James V. Hamilton, a/k/a Black, Gary Hanson, a/k/a Butch, Thomas Johnson, a/k/a T, Amos Keith, Kim Kohl, Earl Thomas, a/k/a Slim, Lorraine Benjamin, Scott

Crandall, Susan Fisher, Jeff Gayton, Greg Hirliman, Jimmy Leon a/k/a Jimmy Dale, Kevin Martinelli, Lamont Parks, Terri Pearman, Michael Rhodes a/k/a Micah, Demetrious Sayles, a/k/a Meechie.

No. 97–CR–133E.

United States District Court,
W.D. New York.

Sept. 23, 1999.

164

Denise E. O'Donnell, United States Attorney, Thomas S. Duszkiewicz, Assistant United States Attorney, of counsel, Buffalo, NY, for the Government.

Terence M. Connors, Vincent E. Doyle, III, Buffalo, NY, for Donald Benjamin.

John J. Lavin, Buffalo, NY, for Neal Benjamin.

William G. Clauss, Federal Public Defender, Marianne Mariano, Assistant Federal Public Defender, of counsel, Buffalo, NY, for Wilson.

James P. Harrington, Buffalo, NY, for Edward Ingenito.

Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, LLP, Paul J. Cambria, Jr., Herbert L. Greenman, of Counsel, Buffalo, NY, for Joseph Scicchitano.

Robert N. Convissar, Buffalo, NY, for Carlos Wiggins.

Horace A. Hutson, Buffalo, NY, for John Bryant.

John J. Molloy, West Seneca, NY, for Sherry Marie Boula.

Joel L. Daniels, Buffalo, NY, for Omar T. Ferguson.

Nathaniel L. Barone, II, Jamestown, NY, for Jamie Friel.

Terrence B. Newcomb, Buffalo, NY, for James V. Hamilton.

Robert M. Goldstein, Buffalo, NY, for Gary Hansen.

Thomas J. Eoannou, Buffalo, NY, for Amos Keith.

Gerald T. Walsh, Buffalo, NY, for Defendant Kim Kohl.

James P. Milbrand, Buffalo, NY, for David Sharpe.

## MEMORANDUM and ORDER

ELFVIN, Senior District Judge.

The above individuals ("the defendants"), twenty-nine in all, are charged in and by a Superceding Indictment[1] filed April 28, 1998, with having conspired to possess particular controlled substances with the intention to distribute the same and with distributing such. Further, certain of the defendants are charged with—non-conspiratorially—distributing particular controlled substances and one of the defendants is charged with having unlawfully engaged in a continuing criminal enterprise.

Certain pretrial motions filed by or on behalf of fifteen of the defendants were referred to the Hon Leslie G. Foschio, a United States Magistrate Judge of this Court, for his consideration and recommended dispositions. Judge Foschio's Decision and Order ("the R & R") was filed May 21, 1998. Thereafter and timely, certain of the defendants filed objections to the R & R, oppositions to such objections were served and filed. All of the same have been argued to the undersigned who has taken the same and the R & R into deliberative consideration.

The undersigned has given close attention to the premises advanced on behalf of each of such objecting defendants, has examined certain items which Judge Foschio had placed under seal and has considered all of the legal and factual arguments presented by such defendants.

Upon such due consideration, the May 31, 1998 Decision and Order of Judge Foschio is affirmed in all aspects.

Such objections are therefore and hereby *ORDERED* denied.

## REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

This matter was referred to the undersigned by the Hon. John T. Elfvin on July 9, 1997. The matter is presently before the court for a determination of pretrial motions from Defendants Donald Benja-

---

**1.** Such charging instrument further contains four forfeiture counts.

min (Doc. # 119), filed December 12, 1997, Wilson (Doc. # 118), filed December 12, 1997, Ingenito (Doc. # 138), filed December 31, 1997, Scicchitano (Doc. # 120), filed December 15, 1997, Wiggins (Doc. # 94), filed November 14, 1997, Bryant (Doc. # 136), filed December 29, 1997, Boula (Doc. # 139), filed January 9, 1998, Ferguson (Doc. # 98), filed November 4, 1997, Friel (Docs. # 33 and 128), filed July 7, 1997 and December 16, 1997, respectively, Hanson (Doc. # 130), filed December 23, 1997, Johnson (Doc. # 90), filed September 23, 1997, Keith (Doc. # 104), filed November 24, 1997, Kohl (Doc. # 95), filed November 14, 1997, Sharpe (Doc. # 102), filed November 19, 1997, and Thomas (Doc. # 121), filed December 15, 1997.[1, 2]

### BACKGROUND and FACTS

Defendants were indicted in a twenty-three count indictment on June 24, 1997 charging violations of 21 U.S.C. § 841(a)(1), § 841(b)(1)(A), § 841(b)(1)(B), § 841(b)(1)(C), § 846, § 848, § 853(a), and 18 U.S.C. § 2. Specifically, Defendants are charged with conspiracy to possess with intent to distribute, and with the distribution, of 50 grams or more of crack cocaine, 5 kilograms or more of cocaine, and 50 kilograms or more of marijuana. Defendant Donald Benjamin is charged as the principal organizer of a continuing criminal enterprise. The individual defendants are also charged with offenses including the unlawful distribution of cocaine. Additionally, the Government is seeking the forfeiture of assets constituting the proceeds

from controlled substance violations against Defendants Donald Benjamin, Wilson, Ingenito, Scicchitano.

Defendants have filed omnibus motions seeking, *inter alia,* to dismiss their respective charges on the grounds of facial insufficiency and double jeopardy, to suppress evidence as seized pursuant to search warrants issued without probable cause, suppression of the federal electronic communication intercept evidence and the statements obtained from the intercept, and for a hearing under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The Government responded on January 9, 1998.

Oral argument was conducted on January 23, 1998. Copies of the *in camera* applications for the state search warrants at issue were delivered to the court on March 16 and March 25, 1998. On April 30, 1998, the court directed the Government to respond to Defendants Wilson, Friel and Kohl's requests for disclosure of the *in camera* testimony provided to obtain the state search warrants issued as to their respective premises. The response was filed May 7, 1998; replies were filed by Defendants Kohl and Wilson on May 13, 1998, as directed.

### DISCUSSION

#### 1. *Dismissal of the Indictment*

Defendants move to dismiss on various grounds, including insufficiency, double jeopardy, duplicity, and that the Indict-

---

1. Included in these motions are Defendants' requests for nondispositive relief, *i.e.,* disclosure of exculpatory evidence, requests for a bill of particulars, disclosure of statements made by co-conspirators, disclosure of the Government's sentencing theories, preservation of rough notes, disclosure of confidential informants and the identity of any unindicted co-conspirators, and motions by three Defendants to sever their trial from the trial of the co-Defendants. Pursuant to 28 U.S.C. § 636(b), the court has considered these nondispositive matters in a Decision and Order filed contemporaneously with this Report and Recommendation.

2. Although all the pending omnibus motions are extensive, most of Defendants' requests for pretrial relief are general requests and only some Defendants provide substantive arguments in support of any certain requests. However, each Defendant's motion papers also include a statement indicating that the Defendant joins in the requests made by each of the other Defendants. Accordingly, the court considers each Defendant as having requested the same relief insofar as each Defendant has standing to make such a request and references to motion papers of specific Defendants will be made only with regard to Defendants who provided substantive arguments.

ment was based on improperly obtained evidence. The Government has opposed the motion on each of these grounds.

### a. *Sufficiency of the Indictment*

Defendants claim that the Indictment fails to fairly apprise them of the conduct giving rise to the charged offenses, as required by Rule 7(c)(1) of the Federal Rules of Criminal Procedure and, as such, the Indictment does not meet constitutional notice requirements under the Sixth Amendment as to the essential facts of the offenses charged.[3] Specifically, Defendants assert that the Indictment counts are so vague and indefinite that they fail to inform Defendants of the nature or cause of the accusations giving rise to their alleged criminal liability. Additionally, Defendant Kohl argues for dismissal on insufficiency grounds based on the Government's failure to respond to discovery requests. Kohl Memorandum of Law at 2.

 An indictment is facially valid and sufficient if it contains the elements of the offense charged, fairly informs a defendant of the charges against which he must defend, and enables a defendant to plead an acquittal or a conviction in bar of further prosecution for the same offense. *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir.), *cert. denied,* 504 U.S. 926, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992); *United States v. Ferrara,* 701 F.Supp. 39 (E.D.N.Y.1988). An indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, state the time and place of the alleged offense in approximate terms. *Russell v. United States,* 369 U.S. 749, 765, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Covino,* 837 F.2d 65, 69 (2d Cir.1988); *United States v. Bagaric,* 706 F.2d 42, 61 (2d Cir.), *cert. denied,* 464 U.S. 840, 104

S.Ct. 133, 78 L.Ed.2d 128 (1983); *Ferrara, supra,* at 44.

The form of an indictment is governed by Fed.R.Crim.P. 7(c)(1) which provides that "the indictment . . . shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." *United States v. Macklin,* 927 F.2d 1272, 1276 (2d Cir.), *cert. denied,* 502 U.S. 847, 112 S.Ct. 146, 116 L.Ed.2d 112 (1991). To satisfy this rule, "[t]he facts alleged must be adequate to permit a defendant to plead former jeopardy upon prosecution. The indictment must also be sufficiently specific to enable the defendant to prepare a defense." *United States v. Carrier,* 672 F.2d 300, 303 (2d Cir.), *cert. denied,* 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982). As such, it is well settled that indictments which track the statutory language defining an offense are, as a general rule, sufficient under Rule 7(c) so long as application to a particular defendant is clear. *United States v. Upton,* 856 F.Supp. 727, 739 (E.D.N.Y.1994). Additionally, while a bill of particulars cannot cure a constitutionally defective indictment, particularization is appropriate when the indictment is challenged as insufficient to permit the preparation of an adequate defense. *Upton, supra,* at 740–41. It is well established that an indictment which complies with Rule 7(c) also satisfies the requirements of the Sixth Amendment. *Russell, supra,* at 763–64, 82 S.Ct. 1038; *Upton, supra,* at 738; *United States v. Abrams,* 539 F.Supp. 378, 384 (S.D.N.Y. 1982).

Specifically, an indictment will satisfy the Sixth Amendment if it "contains the elements of the offense intended to be charged, 'and *sufficiently* apprises the defendant of what he must be prepared to meet.'" *Russell, supra,* at 763–64, 82 S.Ct. 1038 (quoting *Hagner v. United States,* 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932) (citations omitted)) (emphasis added). While pleading "generic"

---

**3.** "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ." U.S. Const. Amend. VI.

terms only without the "species" will be insufficient, *United States v. Cruikshank*, 92 U.S. 542, 558, 23 L.Ed. 588 (1875), an indictment need only apprise the defendant of the nature of the accusation against him "with *reasonable* certainty," and will be sufficient if the language of the statute is charged along with "a statement of the facts and circumstances as will inform the accused of the specific offense ... with which he is charged." *Russell, supra*, at 765–66, 82 S.Ct. 1038 (citing cases) (emphasis added).

In this case, Defendants claim that Count One fails to state facts supporting the allegations of a conspiracy. Count One charges all nineteen Defendants with conspiracy to distribute and possession with the intent of distributing fifty or more grams of crack cocaine or five or more kilograms of cocaine or fifty or more kilograms of marijuana in violation of 21 U.S.C. § 841. Indictment, Count One. However, conspiracies charged under 21 U.S.C. § 846 are subject to the same pleading rule applicable to the substantive counts as discussed. *Macklin, supra*, at 1276.

 Proof of an overt act is not a necessary element to a conspiracy charged under 21 U.S.C. § 846 as "the conspiracy to distribute narcotics is in and of itself a specific crime." *United States v. Bermudez*, 526 F.2d 89, 94 (2d Cir.1975), *cert. denied*, 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976)(citing cases). Additionally, as an indictment is sufficient if it charges the offense using the words of the statute, an indictment under Section 846 "need only allege the existence of a narcotics conspiracy, a relevant time frame, and the statute alleged to be violated." *Macklin, supra*, at 1276 (citing *United States v. Bermudez, supra*, at 94). Further, Rule 7 was satisfied in this case as the Indictment alleges the existence of a conspiracy to distribute and possess with the intent of distributing crack cocaine, cocaine or marijuana, the relevant three year time frame during which the alleged conspiracy took

place, and the violations of Title 21, Sections 841(a)(1), (b)(1)(A), (B) and (C) (possession with intent to distribute and distribution of narcotics including cocaine and marijuana), 848 (leader of conspiracy), and 853(a) (forfeiture of assets) of the United States Code.

 Nor is it necessary for the indictment to show that the co-conspirators were fully aware of the details or goals of their venture, but only that they agreed on the essential nature of the plan. *United States v. Amiel*, 95 F.3d 135, 144 (2d Cir.1996)(discussing factors upon which a conspiracy may be found to exist); *United States v. Bagaric*, 706 F.2d 42, 63 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983)("the coconspirators need not have agreed on the details of the conspiracy, so long as they agree on the essential nature of the plan"); *United States v. Rosenblatt*, 554 F.2d 36, 40 (2d Cir.1977)(reversing conspiracy conviction on the basis that the indictment which charged a conspiracy to defraud the United States, without more, was insufficient to define the central nature of the conspiratorial plan where the defendants did not agree on the object of the conspiracy). *See also United States v. Standard Drywall Corporation*, 617 F.Supp. 1283, 1290 (E.D.N.Y.1985) (indictment sufficient where conspiracy to defraud the United States set forth agreed upon plan providing that defendants, among other things, paid employees "off the books" without withholding any deductions). The agreement need not be explicit but may be inferred from facts and circumstances. *Amiel, supra*, at 144 (citing *Iannelli v. United States*, 420 U.S. 770, 777 n. 10, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975)). Further, no written statement or even express oral statement is required as a tacit understanding is sufficient to establish a conspiracy for the purposes of a conspiracy conviction. *Amiel, supra*, at 144 (citing 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 6.4 at 71 (1986)). As such, Defendants' motions to

dismiss Count One as insufficient should be DENIED.

Count Two charges Defendant Donald Benjamin with violating 21 U.S.C. § 848, which provides that a sentence of life imprisonment may be assessed against a convicted defendant who is engaged in a "continuing criminal enterprise" and who is found to be "the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders." 21 U.S.C. § 848(a) and (b)(1). A person is engaged in a continuing criminal enterprise if the charged violations of Subchapter One of Title 21 of the United States Code, which includes Sections 841, 846, and 853,

> are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and ... from which such person obtains substantial income or resources.

21 U.S.C. § 848(c)(2)(A) and (B).

Here, Count Two specifically charges that during the time period commencing June 1, 1994, and continuing through June 24, 1997, Defendant Donald Benjamin "did knowingly, willfully, intentionally and unlawfully engage in a Continuing Criminal Enterprise" by violating 21 U.S.C. §§ 841(a)(1) and (846) in concert with five or more other persons, with respect to whom the defendant, Donald Benjamin, Jr., a/k/a Ducky, "occupied a position of organizer, supervisor, and manager and from which continuing series of violations, the defendant, Donald Benjamin a/k/a Ducky, obtained substantial income and resources." Indictment, Count Two. This language sufficiently tracks the language of 21 U.S.C. § 848 such that Defendant Benjamin was adequately apprised of the circumstances and nature of the crimes pending against him. As such, Count Two of the Indictment should not be dismissed on the basis that it is insufficient.

Counts Twenty, Twenty–One, Twenty–Two and Twenty–Three all seek forfeiture of "any and all property constituting or derived from any proceeds obtained, directly or indirectly, as a result of said controlled substance violations pursuant to Title 21, United States Code, Section 853(a)(1)." Indictment, Counts Twenty, Twenty–One, Twenty–Two and Twenty–Three. The criminal forfeiture of property is governed by 21 U.S.C. § 853(a)(1) which provides that any person convicted of a violation of Subchapter One of Title 21 of the United States Code, which includes Sections 841, 846, and 848, shall forfeit to the United States

> any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation.

21 U.S.C. § 853(a)(1).

Here, the challenged criminal forfeiture counts track the language of 21 U.S.C. § 853(a)(1) almost word-for-word. As all the Defendants who face criminal forfeiture of their property are also charged with participating in the conspiracy under Count One, such Defendants were adequately apprised that the nature and circumstances of the forfeiture charges are attributed to the conspiracy charge. Accordingly, Counts Twenty, Twenty–One, Twenty–Two and Twenty–Three are all sufficient and should not be dismissed.

Finally, Counts Three through Nineteen charge violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), (B) or (C) which provide, in part, that it is illegal to manufacture, distribute, dispense, or possess with intent to manufacture, distribute or dispense a controlled substance (§ 841(a)(1)), including five kilograms or more of a mixture or substance containing a detectable amount of cocaine (§ 841(b)(1)(A)), or 500 grams or more of a mixture or substance containing cocaine (§ 841(b)(1)(B)). Counts Four, Six, Eight, Twelve, Thirteen, Fourteen, Fifteen, Seventeen, Eighteen and Nineteen also charge those Defendants named with violating 18 U.S.C. § 2 pursuant to

which an aider or abettor of a crime may be charged on the same manner as the principal perpetrator.

An indictment that tracks the statutory language defining the offense generally satisfies the requirements that an indictment contain the elements of the offense, notice to the defendant of the charges he must be prepared to meet, and information sufficient to protect the defendant against double jeopardy. *United States v. Aliperti*, 867 F.Supp. 142, 144 (E.D.N.Y.1994). Here, the counts allege not only the statutory elements, but also identify that date and location where such prohibited conduct occurred. For example, Count Three states in its entirety

> On or about the 20th day of December, 1995, at Olean, New York, in the Western District of New York and elsewhere, the defendant, Neal Benjamin, did knowingly, intentionally and unlawfully possess with intent to distribute and distribute a quantity of a mixture or substance containing cocaine base, a Schedule II controlled substance; all in violation of Title 21, United States Code, Section 841(a)(1).

Indictment, Count Three.

The other counts alleging individual violations of § 841(a)(1) are similar. As such allegations track the language of the statute which the specific Defendant is charged with violating, the court finds the Indictment reasonably apprises Defendants of the circumstances and nature of the charges against them, and also informs Defendants of the time and place of the alleged offenses in approximate terms. *Russell, supra,* at 765, 82 S.Ct. 1038; *Covino, supra,* at 69; *Bagaric, supra,* at 61; *Ferrara, supra,* at 44. Accordingly, Defendants' motions to dismiss Counts Three through Nineteen of the Indictment as insufficient should be DENIED.

Accordingly, the court finds no basis upon which to grant the Defendants' motions to dismiss the Indictment for legal insufficiency and the motions should, as to that ground, be DENIED.

**b. *Double Jeopardy***

Defendant Kohl also argues that the charges against her constitutes double jeopardy as Kohl was already charged with possession of marijuana in violation of state law following her arrest by the Olean Police following the search and seizure on May 23, 1996. Kohl Memorandum of Law (Doc. # 96), filed November 24, 1997, at 4. Although Kohl fails to provide the precise disposition of that matter, she maintains that it was adjourned in contemplation of dismissal, a disposition available under state law. *Id.* Accordingly, Kohl argues that the current federal charges, premised on the same May 23, 1996 search and seizure which resulted in the state possession of marijuana charge, constitute a violation of the double jeopardy clause of the Fifth Amendment. *Id.*

The Double Jeopardy Clause of the Fifth Amendment provides in relevant part that "[no] person shall be subject for the same offence to be twice put in jeopardy of life or limb." United States Const. Amend. V, cl. 2. The thrust of Kohl's argument is that the Government's subsequent federal prosecution of her based on substantially the same underlying conduct for which Kohl has already received an adjournment in contemplation of dismissal under state law violates the Double Jeopardy Clause. Defendant Kohl's Memorandum of Law in Support of Pretrial Motions (Doc. # 96), filed November 14, 1997, at 4.

 The doctrine of dual sovereignty, however, recognizes that the state and federal governments are distinct political entities, each of which draws its sovereign power from separate sources of fundamental law. *United States v. Davis*, 906 F.2d 829, 832 (2d Cir.1990). As such, each sovereign has independent power "to determine what shall be an offense against its authority and to punish such offenses." *Davis, supra,* at 832. Accordingly, subsequent prosecution in federal court on substantially similar charges based on the

same conduct for which defendant was prosecuted in state court is not barred by the double jeopardy clause of the Fifth Amendment because the defendant has offended against the law of both sovereigns. *Heath v. Alabama,* 474 U.S. 82, 89, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985).

Even if there were no dual sovereignty exception to the Double Jeopardy Clause, as the relevant state and instant federal charges are substantively different, no double jeopardy arises. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)("where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not"). Kohl's state offense involved a charge based solely on a single act of possession of marijuana [4]; the instant federal offenses challenged by Kohl are, under Count One, for conspiracy to possess with intent to distribute and distribution of controlled substances over a period of three years (21 U.S.C. §§ 841(a)(1), (b)(1)(A) and (B) and 846), as well as, under Count Twelve, a single charge of possession with intent to distribute cocaine (21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2). Prosecution on such offenses involving as they do different elements such as possession with intent to distribute, distribution and conspiracy as to crack cocaine, cocaine and marijuana compared to a charge of simple possession of marijuana without intent to distribute, does not constitute double jeopardy. *Blockburger, supra; United States v. Felix,* 503 U.S. 378, 389–90, 112 S.Ct.

1377, 118 L.Ed.2d 25 (1992) ("The 'essence' of a conspiracy offense 'is in the agreement or confederation to commit a crime'") (quoting *United States v. Bayer,* 331 U.S. 532, 542, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947)); *United States v. Liller,* 999 F.2d 61, 63 (2d Cir.1993) (where pending charge covers a broad range of conduct, allegations of the indictment must be examined in addition to the terms of the relevant statutes to determine if the offenses charged are separate). It is well settled that a conspiracy charge with its core element of an agreement to commit a substantive offense is dissimilar for double jeopardy purposes from the object offense. *Felix, supra; United States v. Sessa,* 125 F.3d 68, 71–72 (2d Cir.1997), *cert. denied,* 522 U.S. 1065, 118 S.Ct. 731, 139 L.Ed.2d 669 (1998); *United States v. Gambino,* 968 F.2d 227, 231 (2d Cir.1992); *United States v. Margiotta,* 646 F.2d 729, 733 (2d Cir. 1981); *United States v. Murray,* 618 F.2d 892, 896 (2d Cir.1980). Further, a substantive count charging possession with intent to distribute controlled substances manifestly contains additional elements which a charge of simple possession does not. *Blockburger, supra,* at 304, 52 S.Ct. 180. Accordingly, dismissal of the Indictment on the ground of double jeopardy should be DENIED.

### c. *Duplicity*

Defendant Scicchitano moves to dismiss the Indictment on the ground that it is duplicitous as Count One charges him with three separate crimes creating the possibility of conviction despite the potential absence of jury unanimity.[5] Affidavit of

4. Defendant Kohl does not state what provision of the New York Penal Law she was charged with violating for possession of marijuana. However, the court notes that possession of marijuana charges are governed by N.Y. Penal Law §§ 221.05 (unlawful possession), 221.10 (fifth degree), 221.15 (fourth degree), 221.20 (third degree), 221.25 (second degree) and 221.30 (first degree). The various degrees are delineated according to the amount of marijuana possessed. (McKinney

1989 and 1998 supp.). A person is guilty of unlawful possession of marijuana under § 221.05 "when he knowingly and unlawfully possesses marijuana." N.Y. Penal Law § 221.05 (McKinney 1989).

5. Count one charges that all nineteen Defendants "did knowingly, willfully and unlawfully combine conspire and agree together and with others, known and unknown, to commit offenses against the United States, that is, to possess with intent to distribute, and to dis-

Herbert L. Greenman, Esq., attached to Defendant Scicchitano's Notice of Motion (Doc. # 120), filed December 15, 1997 ("Greenman Affidavit"), ¶¶ 46–48. The Government maintains that Count One is not duplicitous merely on the basis that it charges a conspiracy with more than one criminal objective. Government's Response, ¶ 45.

■■■■ An indictment is duplicitous if it joins two or more distinct crimes in a single count. *United States v. Murray,* 618 F.2d 892, 896 (2d Cir.1980). However, a duplicitous indictment, which alleges several offenses in the same count, must be distinguished from "the allegation in a single count of the commission of a crime by several means." *Murray, supra; United States v. Aracri,* 968 F.2d 1512, 1518 (2d Cir.1992). It is well established that the allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the crime charged is the single offense of conspiracy, however diverse its objects. *See Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942); *United States v. Margiotta,* 646 F.2d 729, 733 (2d Cir.1981); *United States v. Murray, supra.* Moreover, "[a] single count is not duplicitous merely because it contains several allegations that could have been stated as separate offenses." *United States v. Sugar,* 606 F.Supp. 1134, 1146 (S.D.N.Y.1985). "Acts that could be charged as separate counts in an indictment may instead be charged in a single count if those acts could be characterized as part of a continuing scheme." *United States v. Tutino,* 883 F.2d 1125, 1141 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990)(citing *Margiotta, supra,* at 733); *Aracri, supra.*

■■■■ Here, the Government has alleged a continuing, ongoing scheme to traffic in controlled substances. According to the Grand Jury, Defendants, including Scicchitano carried out the scheme by individual sales of crack cocaine, cocaine and marijuana which was obtained from Defendant Benjamin. To prove the conspiracy, the Government will be required to show that "each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Martino,* 664 F.2d 860, 876 (2d Cir.1981), *cert. denied,* 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982). A single conspiracy is not transformed into multiple conspiracies "merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance." *United States v. Maldonado–Rivera,* 922 F.2d 934, 963 (2d Cir.1990), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2811, 115 L.Ed.2d 984 (1991). All the individual counts with which the Defendants are charged are evidence upon which the jury may determine that the conspiracy was ongoing and its objective was to traffic in each of those types of narcotics as alleged, in violation of federal law.

Accordingly, the court finds that Count One charges a single narcotics trafficking conspiracy accomplished through actions of the individual Defendants' actions in possessing and distributing crack cocaine, cocaine and marijuana and is, therefore, not duplicitous. *See Aracri, supra.* As such, the motion to dismiss should be DENIED.

**d.** ***Introduction of Improper Evidence to the Grand Jury***

■■■■ Defendant Benjamin also argues the Indictment should be dismissed as it is based on evidence derived from improper electronic communication intercepts which

tribute, 50 grams or more of a mixture or substance containing *cocaine base,* a Schedule II controlled substance, 5 kilograms or more of a mixture or substance containing *cocaine,* a Schedule II controlled substance, and 50 kilograms or more of a mixture or substance containing *marijuana,* a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 841(b)(1)(C); all in violation of Title 21, United States Code, Section 846." Indictment, Count One (emphasis added).

has "seriously impaired the integrity of the grand jury in this case." Affidavit of Vincent E. Doyle, III, Esq., attached to Defendant Donald Benjamin's Pre–Trial Motions (Doc. # 119), filed December 12, 1997 ("Doyle Affidavit"), ¶ 48. However, the court does not find that the challenged electronic communication intercepts were improper. *See* Discussion, *infra,* at 35–48. Moreover, a federal Indictment may not be dismissed on the ground that inadmissible evidence was presented. *Costello v. United States,* 350 U.S. 359, 363–64, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Casamento,* 887 F.2d 1141, 1182 (2d Cir. 1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990). As such, the Dismissal of the Indictment on this ground should be DENIED.

## 2. *Suppression of Evidence Seized Pursuant to Search Warrants*

Defendants Wilson, Ingenito and Scicchitano challenge the federal search warrants on the basis they were issued without probable cause. Defendants Wilson, Kohl and Friel similarly challenge the state search warrants. The federal search warrant is also challenged as overly broad.

As a threshold matter, the court notes that all of the Defendants moving to suppress evidence on the basis the warrants were issued without probable cause have standing to contest such warrants as they had a reasonable expectation of privacy in the place searched. *See* Affirmation of Marianne Mariano, Esq., attached to Defendant Wilson's Notice of Motion (Doc. # 118), filed December 12, 1997 ("Mariano Affirmation"), p. 3 (search of residence at Seneca Avenue, Olean, New York); Defendant Ingenito's Pretrial Motions (Doc. # 138), filed December 31, 1997, p. 13 (search of residence at 457 ½ North Union Street, Olean, New York); Greenman Affidavit, ¶ 17 (search of business, Double Nickel Auto, at 1712 East State Road, Olean, New York). *New York v. Burger,* 482 U.S. 691, 699, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987)(holding the Fourth

Amendment's prohibition against unreasonable searches apples to commercial premises as well as to private homes). The Government has not argued otherwise.

### a. *Federal Search Warrants*

Federal search warrants were issued by the undersigned on June 27, 1997, authorizing the Drug Enforcement Administration ("DEA") to search three premises located in Olean, New York, specifically, the residences of Defendant Wilson, and of Defendant Ingenito, and the business operated by Defendant Scicchitano, Double Nickel Auto. Defendants Scicchitano and Ingenito argue that the search warrants were issued without probable cause. Affidavit of Herbert L. Greenman, Esq., attached to Defendant Scicchitano's Notice of Motion (Doc. # 120), filed December 15, 1997, ¶ 31; Defendant Ingenito's Pretrial Motions (Doc. # 138), filed December 31, 1997, Schedule 4, p. 13. Scicchitano also maintains the search warrant for his business is invalid as it fails to properly limit the scope of the search, resulting in the authorization of a constitutionally impermissible general, exploratory search. Greenman Affidavit, ¶ 17.

### 1. *Probable Cause for Federal Search Warrants*

As standing to challenge the search warrants is not at issue, Defendants contend the search warrants were issued without probable cause. In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court set forth the "totality of the circumstances" test for the determination of probable cause under the Fourth Amendment. The issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particu-

lar place." *Gates, supra,* at 238, 103 S.Ct. 2317 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). The quantum of proof necessary to establish probable cause is "only the probability, and not a prima facie showing, of criminal activity . . . ." *Gates, supra* (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)).

The same thirty page affidavit provided by DEA Special Agent James M. McGill ("McGill Affidavit") was provided in support of the applications for each of the search warrants issued by the undersigned on May 27, 1997.[6] That affidavit contains sufficient information to support a finding of probable cause. McGill's affidavit, which is based on information provided by five confidential informants, provides numerous details of the charged narcotics trafficking conspiracy.[7]

CS–1 provided information about the organization of the conspiracy, reporting that Benjamin discussed drug trafficking and financial matters with him on a continuing basis. McGill Affidavit, ¶ 7. According to information received from CS–1, Benjamin, the alleged leader of the drug trafficking operation, operates a garbage removal business as a cover for his drug trafficking. *Id.,* ¶ 9. Benjamin trusts Defendant Jeff Evans whom he treats "like a brother" because while Jeff Evans's brother Todd Evans "has a very bad crack habit." Jeff Evans does not use drugs. *Id.* CS–1 reported that upon obtaining the powdered cocaine, Benjamin would "cook it up" into crack cocaine which would then be hidden in rural areas around Clean until it could be distributed and sold.[8] *Id.,* ¶ 8. CS–1 told McGill that Defendant Benjamin had an agreement whereby Defen-

dant Scicchitano provided Benjamin with use of a different vehicle each month from Scicchitano's automobile dealership, Double Nickel Auto, to make the trips to Buffalo and New York City to purchase drugs. *Id.,* ¶¶ 4, 9. In return, Scicchitano received a regular supply of drugs from Benjamin. *Id.,* ¶¶ 4,9. CS–1 also advised that Defendants Wilson and Ingenito were the financial backers of Benjamin's drug trafficking business. *Id.,* ¶ 10. This confidential informant testified before the Grand Jury which indicted Benjamin, Wilson, Ingenito and Scicchitano on federal drug trafficking charges prior to the issuance of the search warrant. *Id.,* ¶¶ 5,6.

Much of the Benjamin's drug trafficking activity was also detailed by the other confidential informants. CS–2 connected Wilson and Ingenito directly to Benjamin's drug conspiracy and reported that he had accompanied Benjamin on several trips to obtain cocaine and that CS–2 participated in the distribution of the drugs. *Id.,* ¶¶ 13, 14, 16. After obtaining cocaine from suppliers in Buffalo or New York City, Benjamin reportedly would pay others $50 for use of their homes to "cook it up." *Id.,* ¶ 13.

CS–3 provided information pertaining to Benjamin's use of three young males to distribute cocaine because Benjamin believed they would be treated with leniency if caught. McGill Affidavit, ¶ 21. CS–3 also gave information pertaining to Benjamin's weekly earnings from the drug trafficking and also indicated that Defendants Wilson and Ingenito were Benjamin's financial backers. *Id.,* ¶¶ 23–24.

CS–4 reported that he regularly purchased marijuana and crack cocaine from Defendants Benjamin and Wilson, occasionally tendering food stamps as pay-

---

6. A copy of the McGill Affidavit is attached as Exhibit B to Defendant Ingenito's Pretrial Motions (Doc. # 138), filed December 31, 1997.

7. The five confidential informants are referred to as "CS–1," "CS–2," "CS–3," "CS–4" and "CS–5."

8. The term "cook it up" is a slang term which refers to the conversion of powdered cocaine into crack cocaine or a cocaine base. McGill Affidavit, ¶ 8.

ment. McGill Affidavit, ¶¶ 26–27. CS–4 also reported he had accompanied Benjamin on trips to Buffalo where Benjamin purchased crack cocaine from an individual who operated a "Bronco type" vehicle. *Id.*, ¶ 27.

CS–5 specifically recalled that Wilson held cash proceeds directly from drug trafficking for Benjamin in envelopes kept in a cigar box in Wilson's restaurant. McGill Affidavit, ¶ 38. Benjamin avoided having large quantities of crack cocaine within Olean's city limits as he feared he would be subjected to a search warrant there. *Id.*, ¶ 42. CS–5 also directly connected Defendant Scicchitano's auto sales business with the Benjamin narcotics conspiracy. *Id.*, ¶¶ 44, 45. Further, on several occasions Benjamin employed violence in furtherance of the drug trafficking conspiracy. *Id.*, ¶¶ 42, 48.

Three of the five confidential informants reportedly were participants in the conspiracy. CS–2 was dealing drugs since 1992 for Defendant Benjamin who would provide CS–2 with up to one ounce of cocaine to sell at one time. McGill Affidavit, ¶¶ 12, 14. Benjamin often sent someone to CS–2's home to pick up cash from cocaine sales and to drop off more cocaine for CS–2 to sell. *Id.*, ¶ 14. CS–2 would often accompany Benjamin on trips to Buffalo to pick up cocaine and, upon returning to the Olean area, assisted Benjamin in "cooking up" the cocaine into crack cocaine. *Id.*, ¶¶ 13. CS–2 also stated that he sold crack cocaine to Defendant Wilson between six and twelve times. *Id.*, ¶ 17.

CS–3 reportedly picked up crack cocaine under the direction of Benjamin from Defendant Jeff Evans twice a week. McGill Affidavit, ¶ 19. Later, Evans would pick up the proceeds from CS–3's cocaine sales from CS–3's residence. *Id.*, ¶ 20. CS–3 reported average weekly earnings of $1,000 and $2,000 from selling cocaine for Benjamin. *Id.*, ¶ 23.

CS–5 reported that he began selling marijuana obtained from Defendant Benjamin "several years ago." McGill Affidavit,

¶ 31. CS–5 also reported that as a result of such activity, he was arrested and incarcerated in connection with a drug transaction. *Id.* However, as CS–5 refused to cooperate with law enforcement officials with regard to that charge and conviction, CS–5 earned Benjamin's trust and, upon release, was given a job selling crack cocaine for Benjamin. *Id.*, at ¶ 32. CS–5 also reported that he supplied drugs daily to a restauranteur named Terry Williams who permitted CS–5 to sell drugs from his restaurant. *Id.*, ¶ 40. CS–5 also reported that on one occasion he and Defendant Evans cut a quantity of crack cocaine for distribution at a trailer located in Hinsdale, New York. *Id.*, ¶ 42.

█ The undersigned was entitled to credit the information provided by the confidential sources because CS–2, CS–3 and CS–5 had made admissions against penal interest. *United States v. Morales,* 788 F.2d 883, 885 (2d Cir.1986)(admission against interest may be considered in probable cause determination), and had testified before the grand jury which had returned an indictment. *United States v. Contreras,* 776 F.2d 51, 54 (2d Cir. 1985)("an indictment returned by a duly constituted and unbiased grand jury satisfies the Constitution as to the existence of probable cause the defendant committed the crimes enumerated therein")(citing *Lawn v. United States,* 355 U.S. 339, 349, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958)).

Significantly, many of the details of the drug conspiracy provided by one confidential informant were corroborated by the testimony of at least one other confidential informant. For example, all five confidential informants reported that Benjamin made numerous trips from Olean to Buffalo and New York City where Benjamin obtained cocaine and marijuana which Benjamin then repackaged for resale in the Olean area. McGill Affidavit, ¶¶ 4, 8, 9, 12, 14, 18, 22, 33, 34, 42, 43, 46. All five of the confidential informants also identified Defendant Wilson as a financial back-

er of the drug trafficking operation, *Id.*, ¶¶ 4, 7, 10, 15, 16, 24, 27, 37, 38, and three of the five also identified Defendant Ingenito as another financial backer. *Id.*, ¶¶ 10, 16, 24. Two of the five confidential informants identified Defendant Jeff Evans as Benjamin's most trusted associate for the reason that Jeff Evans did not use drugs. *Id.*, ¶¶ 7, 36. Two of the confidential informants supplied information regarding Benjamin's hiding places for the drugs along the railroad tracks in rural areas outside Olean city limits once they had been cooked up and repackaged for further distribution. *Id.*, ¶¶ 8, 33, 42.

Additionally, this judicial officer properly inferred based on McGill's experience that as members of the narcotics conspiracy, Ingenito's and Wilson's residences and Scicchitano's place of business would contain evidence of narcotics trafficking. *United States v. Riley*, 906 F.2d 841, 845 (2d Cir.1990); *United States v. Fama*, 758 F.2d 834, 838 (2d Cir.1985)(agent's expert opinion is an important factor to be considered by judicial officer with regard to warrant application and should also be considered in determining whether warrant was executed in good faith).

Thus, the McGill affidavit provides sufficient probable cause to support all three search warrants issued by the undersigned on June 27, 1997. Further, even if it were assumed that there was an absence of probable cause, no Defendant provides any reason to believe that the warrants and their fruits would not also qualify for the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

### 2. *Scope of Federal Search Warrant*

▆ Defendant Scicchitano also argues that the scope of the search warrant was overly broad and "sweeping," and therefore authorized a general search in violation of the Fourth Amendment's particularity requirement. Greenman Affidavit, ¶ 17. It is basic that a search warrant must describe with particularity "the place to be searched, and the persons or things to be seized," U.S. Const. Amend IV, to prevent a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Depending on the circumstances, a warrant need not specifically describe the items to be seized provided the officers seeking the warrant "have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have assured that all those facts were included in the warrant." *United States v. Young*, 745 F.2d 733, 759 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). A warrant is sufficiently particular under the Constitution if it enables the executing officer to ascertain and identify with reasonable certainty those items that the issuing magistrate has authorized him to seize. *United States v. George*, 975 F.2d 72, 75 (2d Cir.1992)(citing *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987)). The particularity requirement renders a general search under a warrant "impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927); *see also Young, supra*, at 758.

▆ "Mere reference to 'evidence' of a violation of a broad criminal statute or general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to seize." *George, supra*, at 76 (citing cases). However, the absence of a precise description of the items to be seized does not necessarily invalidate the search warrant provided such warrants identify the specific illegal activity to which the items relate. *George, supra*, at 76 (citing *Young, supra*, at 758; *United States v. Dunloy*, 584 F.2d 6, 8 (2d Cir.1978); *United States v. Scharfman*, 448 F.2d 1352, 1353 n. 1 (2d Cir.

1971), *cert. denied,* 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972)).

In *George, supra,* the court considered the validity of a search warrant which described in detail particular items taken during an armed robbery as well as "other evidence relating to the commission of a crime." *George, supra,* at 74. The court held that the authorization of a search for "evidence of a crime" was so broad as to constitute a general warrant. *George, supra,* at 76 (emphasis added). The court further held that the reference in the warrant to the law enforcement officer's sufficiently specific affidavit submitted in support of the warrant would not "cure" the improperly broad warrant unless such reference specifically directed "the executing officers to refer to the affidavit for guidance concerning the scope of the search." *George, supra,* at 76.

 The court does not find that the search warrant authorizing the search of Defendant Scicchitano's business was impermissibly broad. First, such search warrant specifically describes the place to be searched as "1712 East State Road, Olean, New York, a single story building, brown in color with yellow trim, bearing a sign 'Double Nickel Auto' on the front." Search Warrant for 1712 East State Street, Olean, New York.[9] The warrant also describes with particularity the type of criminal activity the commission of which evidence is sought. Specifically, the warrant authorizes the executing officer to seize "quantities of controlled substances, cash, books, receipts, ledgers and other documents and records all of which are contraband, evidence or fruits and instrumentalities of the commission of a criminal offense under Title 21, United States Code, Sections 841, 846 and 848." Search Warrant for 1712 East State Road, Olean.

Such description, given the fact that the warrant was issued to assist in the investigation of a narcotics trafficking conspiracy, was sufficiently particular and did not permit a general search. *United States v. Washington,* 48 F.3d 73, 77–78 (2d Cir.), *cert. denied,* 515 U.S. 1151, 115 S.Ct. 2596, 132 L.Ed.2d 843 (1995)(upholding as sufficiently particular search warrant issued in connection with cocaine trafficking conspiracy which authorized seizure "any and all" (1) forms of cocaine or unlawfully possessed regulated drugs, (2) drug paraphernalia, (3) papers, records, receipts, documentation, telephone lists and records which may be related to illicit drug activity, (4) money acquired through illicit drug activities and (5) firearms and ammunition used to facilitate and/or protect the illicit drug dealing and records of firearm purchases); *Riley,* 906 F.2d at 844(upholding as sufficiently particular search warrant authorizing seizure of "evidence of the offense of conspiracy to distribute controlled substances, namely cocaine, and marijuana, firearms, instrumentalities of cocaine and marijuana distribution such as scales, dilution or 'cut' materials, packaging materials, telephone and/or address books and lists, telephone toll records, records of the distribution of cocaine including records of distribution made and/or payments given or received, the investment of proceeds of drug trafficking in tangible or intangible objects and things, including but not limited to, bank records, brokerage house records, business records, safety deposit box keys or records and other items that constitute evidence of the offenses of conspiracy to distribute controlled substances and distribution of the same"). Here, as the items seized include narcotics, cash and various records of narcotics trafficking, the challenged warrant does not authorize an open-ended search for "evidence" of an unstated crime. Further, the executing agents were entitled to use their experience in investigating such criminal activity to make informed judgments as to whether a particular type of record is one related to narcotics activity. *Riley, supra,* at 844–45 (officer executing search warrant permitted to exercise judgment as to whether

---

9. The federal search warrants have been unsealed at the direction of the court.

particular document or item is within the described category for which seizure has been authorized).

Defendant Scicchitano cites several cases in support of his motion to suppress including *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979); *United States v. Bianco*, 998 F.2d 1112 (2d Cir.1993), *cert. denied*, 511 U.S. 1069, 114 S.Ct. 1644, 128 L.Ed.2d 364 (1994); *George, supra; United States v. Stubbs*, 873 F.2d 210 (9th Cir.1989); and *United States v. Washington*, 797 F.2d 1461 (9th Cir.1986). However, a careful reading of those cases reveals they are all distinguishable from the instant case.

In *Lo–Ji Sales*, the Supreme Court considered the constitutionality of an "open-ended" search warrant issued in connection with an investigation of a violation of New York's obscenity law, and which authorized seizure of "[t]he following items that the court independently [on examination] as determined to be possessed in violation of" the state's obscenity law. *Lo–Ji Sales, supra*, at 321–22, 99 S.Ct. 2319. Significantly, no specific items were listed or described following the authorizing statement. *Id.* Instead, the issuing judge accompanied the law enforcement officers while they executed the search warrant in an adult film and magazine store and made on-the-spot determinations as to whether specific items on the shelves of the store constituted obscene material. *Id.* The search warrant was later amended to reflect the specific items seized. *Id.* Here, although the search warrant describes the individual items to be seized in somewhat generic terms, neither is it an "open-ended" warrant.

In *Bianco*, the court found that a challenged search warrant was invalid on the basis that such warrant included neither a specific description of the precise items to be seized nor the possible crimes involved. *Bianco, supra*, at 1116. However, the court ultimately upheld the validity of the search warrant finding that all the parties involved in the warrant were advised of the scope of the warrant prior to its execution. *Bianco, supra*, at 1116–17. Likewise, in *George*, the court's finding that a search warrant was impermissibly broad turned on the inclusion in such warrant permission to search for "evidence of a crime," without any limitation on the executing officer's discretion. *George, supra*, at 76. In the instant case, however, the warrant plainly states that it authorizes seizure of evidence pertaining to the "commission of a criminal offense under Title 21, United States Code, Section 841, 846 and 848." As such, the stated crimes reasonably define the scope of the evidence for which seizure was sought as to evidence related to drug distribution and the executing officers' discretion was therefore sufficiently circumscribed. *Washington*, 48 F.3d 73, *supra; Riley, supra*.

The search warrant challenged in *Stubbs, supra*, pertained to an investigation of tax evasion where, although the Internal Revenue Service agents seeking the warrant knew specifically what documents they wanted to seize and where such documents could be found, they failed to either include such information in the warrant or to explain why such information could not be included. *Stubbs, supra*, at 211. In the instant case, Scicchitano does not assert the agents knew specifically what evidence was sought or was likely to be found. Moreover, what the agents applying for the warrant subjectively knew, but failed to include in the warrant application or to tell the issuing magistrate, is not decisive. Rather, the scope of a search warrant is sufficiently particularized so long as "all parties involved are informed of the scope and limits upon the authorized search." *See Bianco, supra*, at 1116–17 (citing cases).

Finally, in *Washington*, the court found a search warrant pertaining to the search of a business overly broad insofar as it authorized the seizure of evidence of association between the suspect and any other person without establishing probable cause that such people were involved in any

criminal activity. *Washington, supra,* at 1473. Unlike the warrant successfully challenged in *Washington,* the warrant here does not authorize seizure of items based on a vague standard of Scicchitano's association with other persons. Rather, the warrant is specifically directed to items "which are contraband, evidence or fruits and instrumentalities of the commission of a criminal offense under Title 21, United States Code, Sections 841, 846 and 848." Search Warrant for 1712 East State Street, Olean, New York.

Thus, Defendant Scicchitano's motion to suppress evidence on the ground that the search warrant is overly broad should be DENIED.

**b.** *State Search Warrants*

On May 15, 1996, the Honorable William H. Mountain, III, Olean City Court Judge, issued a search warrant authorizing the search of the residence of Defendants Jamie Friel and Kim Kohl, located at 216 East Pine Street, Olean, New York. Search Warrant, Exhibit B to Pretrial Motions of Defendant Kim Kohl (Doc. # 95), filed November 14, 1997. Defendant Kohl has challenged this warrant on the ground that it was issued without probable cause.[10] Specifically, Defendant Kohl maintains that the application for the search warrant indicates that it was issued based on *in camera* testimony presented by the applicant, Investigator Randy Langdon, which testimony was preserved. Affidavit of Gerald T. Walsh, Esq., attached to Pretrial Motions of Defendant Kim Kohl (Doc. # 95), filed November 14, 1997 ("Walsh Affidavit"), ¶ 11. Defendant Kohl further requested disclosure of such testimony, arguing that such information is needed to establish her claim that the search warrant was issued based on false and misleading statements. Id., ¶ 13.

On April 23, 1997, Judge Mountain also issued a state search warrant authorizing the search of a business owned by Defendant Wilson, known as "Big Ron's," located at 330 North 1st Street, Olean, New York. Search Warrant, Exhibit A to Defendant Wilson's Notice of Motion (Doc. # 118), filed December 12, 1997. Defendant Wilson argues that the application for the state search warrant was a form application which, on its face, is devoid of probable cause. Mariano Affirmation, ¶ 8. Defendant Wilson has not, for the present, challenged the warrant on the basis of probable cause but, rather, has requested disclosure of the recorded *in camera* testimony given in support of such search warrant. Mariano Affirmation, ¶ 9. Wilson reserved his right to move to suppress the search warrant once such information is received. *Id.,* ¶ 11.

The Government, at this court's direction, provided to this court the *in camera* portions of the applications made before Judge Mountain by Investigator Langdon with regard to 216 East Pine Street, Olean and by Investigators Langdon and Slavinsky to with regard to 330 North 1st Street, Olean, *see* Background, *supra,* at 5, but has refused to provide copies to Defendants. *Id.*

**1.** *Failure to Provide Affidavits*

Defendant Kohl attacks the state search warrant on the ground that the application makes no reference "to any sworn allegations of the alleged informant or of any indication of the reliability or veracity of any information provided by the informant." Walsh Affidavit, ¶ 11. Defendant Kohl maintains that the affidavits of the Investigators Langdon should have been included in the search warrant application and that the failure to provide Defendant Kohl with such affidavits indicates that the

---

10. Although Defendant Friel has not specifically challenged this search warrant. Friel has joined in all pre-trial motions made by co-Defendants. Friel Motion, ¶ 25. As Defendants Friel and Kohl both resided at 216 East Pine Street, and as Defendant has specifically challenged the validity of the search warrant for such premises, the court considers Friel as having also moved against the warrant.

statements contained in the warrant application were false or misleading. *Id.*, ¶ 9.

Defendant Kohl's contentions must be rejected as the failure to provide a defendant with affidavits does not infer the affidavits were, for that reason, untrue.[11] Moreover, here the court determined, based upon the *in camera* submissions, that no affidavits containing the specifics of the investigator's information in support of the search warrant were filed with Judge Mountain. Rather, the warrant was issued based primarily on *in camera* testimony given by Investigator Langdon before Judge Mountain, a tape recording of which this court has reviewed. Such procedure is permitted under both state and federal law. *See* N.Y.Crim. Proc. Law §§ 690.35(1) and 690.36 (McKinney 1995); Fed.R.Crim.P. 41(c)(1). Accordingly, Defendants' motions to suppress should be DENIED on this ground.

### 2. *Franks v. Delaware Hearing*

Defendant Kohl has also moved for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), on the ground that the affidavits incorporated into the search warrant issued by Judge Mountain for her residence at 216 East Pine Street, Olean, contained false or misleading statements or omissions and therefore was issued without probable cause.[12] Walsh Affidavit, ¶¶ 9–12. The Government maintains that such hearing is required only where statements or omissions necessary to support a finding of probable cause have been challenged and that no such challenge has been made here. Government's Response, ¶ 54. The Government further argues that a Franks

hearing may not be held to challenge the conclusions drawn by an investigator in his affidavit made in support of the warrant. Government's Response, ¶ 55.

Although Kohl has challenged the search warrant issued by Judge Mountain as without probable cause, this court nevertheless finds no *Franks* hearing is warranted. Under *Franks*, evidence seized pursuant to a search warrant based on materially false and misleading information is not admissible absent a hearing at which it is determined whether, setting aside the false statements, sufficient independent evidence was presented to the judicial officer such that the warrant was, notwithstanding the tainted information, issued on probable cause. *Franks, supra*, at 155–56, 98 S.Ct. 2674. A defendant is entitled to a hearing to test the truthfulness of a search warrant's underlying affidavits "only upon a 'substantial preliminary showing' that (1) the affidavit contained false statements made knowingly or intentionally, or with reckless disregard for the truth; and (2) the challenged statements or omissions were necessary to the [issuing officer's] probable cause finding." *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir.1987)(quoting *Franks, supra*, at 171–72, 98 S.Ct. 2674). Additionally, although an affidavit in support of a search warrant application may contain "both lawful and tainted allegations," a search warrant issued on the basis of such affidavit remains valid if probable cause is found based on an independent consideration of only the lawful information contained in the affidavit. *Franks, supra*, at 170–71, 98 S.Ct.

---

**11.** In the Decision and Order issued simultaneously with this Report and Recommendation, the court determined that the *in camera* testimony before Judge Mountain in support of the state search warrants of the Friel–Kohl residence need not be disclosed on the basis that a challenge to such testimony would necessarily require the Government to reveal the identity of the confidential informants on whose representations the search warrants were based. Disclosure of the *in camera* tes-

timony in support of the state search warrant for Big Ron's was directed in redacted form. *See* Decision and Order filed May 21, 1998, at 34–41.

**12.** Kohl attacks only the affidavit application which she has been provided, rather than the information supplied in support of the warrant application, which has been submitted to this court for *in camera* review.

2674; *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir.), *cert. denied*, 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 102 (1985). *Franks* has been limited to the statements contained in the affidavit based on the investigator's personal knowledge and does not extend to the information the informant may have provided to the applicant.

 "In Leon, the Supreme Court emphasized that 'the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which the determination was based.'" *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir.1996)(quoting *United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and citing *Franks, supra*, at 155–56, 98 S.Ct. 2674). There can be no reasonable grounds for believing that a warrant was properly issued "[i]f the magistrate or judge in issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon, supra*, at 923, 104 S.Ct. 3405. A search warrant may not, however, be challenged under *Franks* on the ground that an informant knowingly or recklessly made a false statement to an affiant so long as the affiant in good faith accurately represents what the informant said unless the informant is a government official. *United States v. Wapnick*, 60 F.3d 948, 956 (2d Cir.1995), *cert. denied*, 517 U.S. 1187, 116 S.Ct. 1672, 134 L.Ed.2d 776 (1996). Based on this court's review of the *in camera* proceedings before Judge Mountain, the court finds Investigator Langdon had relied to a substantial degree upon activity of a confidential informant who had made drug purchases at the Friel–Kohl residence and there is no basis to believe such informant were government officials. Therefore, even if the information provided by the investigator as the applicant could be subjected to scrutiny under *Franks*, the information provided by the informant is not subject to the *Franks* test.

Accordingly, there is no basis for a *Franks* hearing and Defendants' request for such a hearing is, therefore, DENIED.

### 3. The State Search Warrants Were Based on Probable Cause

As noted, the Government has provided the court with copies of the information presented to Judge Mountain in support of both state warrants. This court's *in camera* review of such information reveals that the warrants were issued on probable cause.

 An official authorized to issue a search warrant reviews the supporting affidavit for probable cause by reviewing the "totality of the circumstances" enumerated in the affidavit. *Illinois v. Gates*, 462 U.S. 213, 231–32, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had 'a substantial basis for .... conclud[ing]' that probable cause existed." *Id.*, at 238, 103 S.Ct. 2317 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)),*overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 84, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

 With regard to the application for the search warrant at 216 East Pine Street, Olean, New York, Investigator Langdon presented testimony that through physical surveillance, known drugs dealers were frequently observed at the residence of Defendants Kohl and Friel. Langdon also provided information concerning the purchase of a controlled substance in the residence by a cooperat-

ing individual who was known to be reliable.[13]

It is not clear from the information presented to Judge Mountain whether the confidential informants' purchases of drugs from Defendants were controlled purchases under the direction of the police. Nevertheless, it is irrelevant to the probable cause determination as even if such purchases were not controlled buys, the confidential informant's statements regarding such purchases constitute admissions against interest which support probable cause. *See United States v. Morales*, 788 F.2d 883, 885–86 (2d Cir.1986)(pre-arrest statement against penal interest, although inadmissible at trial as evidence in chief, nevertheless was proper basis for probable cause to arrest); *see also United States v. Feola*, 651 F.Supp. 1068, 1093 (S.D.N.Y.1987), *aff'd.*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989)(observing that admissions against penal interest have been held sufficient to establish probable cause for search warrant).

The court has reviewed Judge Mountain's handwritten notes of April 23, 1997 which the judge made during the hearing held with regard to an application by Investigators Randy Langdon and Mark Slavinski for a search warrant of the commercial property known as Big Ron's, located at 330 North 1st Street, Olean, New York.[14] According to the Judge's notes, the investigators were sworn and presented testimony describing a specific number of undercover purchases of controlled substances which were readily available for purchase, that drug trafficking-type activity was observed at Big Ron's through physical surveillance, that the Olean Police Department had arrested several people

within the vicinity of Big Ron's for possession of controlled substances, that confidential informants wore wires (hidden radio transmitter or tape recorder) into Big Ron's and statements indicating Defendant Wilson's involvement in the conspiracy were overheard, and that the informants who were of proven reliability provided information about the presence of armed individuals inside the premises.

Accordingly, in this case, the court finds that the state search warrants were issued based on probable cause and Defendants' motions to suppress should be DENIED on that ground.

### 4. *Even Absent Probable Cause for the State Warrants, the Leon Good Faith Exception Applies*

 Alternatively, Friel and Kohl's motions must be denied under the good faith exception to the exclusionary rule established by *United States v. Leon*, *supra*, which renders evidence seized pursuant to a challenged warrant admissible provided the police act with objective and reasonable good faith even if the judicial officer erred in finding probable cause. *Leon*, *supra*, at 922, 104 S.Ct. 3405. In *Leon*, the Supreme Court held that the good faith exception applies provided the officer's reliance on the judicial officer's probable cause determination and on the technical sufficiency of the issued warrant is objectively reasonable. *Leon*, *supra*, at 922, 104 S.Ct. 3405. However, suppression remains an appropriate remedy where the judicial officer was misled by relying on information which the affiant knew was false or would have known but for his reckless disregard for the truth, or where the issuing judicial officer wholly aban-

---

13. A cassette tape recording of Investigator Langdon's *in camera* testimony before Judge Mountain has been sealed as Court Exhibit A for further judicial review. To facilitate such review, the court has directed a transcription of the tape recorded application also be made and filed.

14. The court has also transcribed the handwritten notes as an aid to interpreting the sworn statements presented to Judge Mountain. Both the copy of Judge Mountain's notes, as provided to this court by the Clerk of the Olean City Court and the transcription have been sealed as Court Exhibit B to provide for further judicial review.

doned his judicial role. *Leon, supra,* at 923, 104 S.Ct. 3405.

■ Based on this court's review of the application, including tape recording of the confidential *in camera* proceedings before Judge Mountain, the court finds that the investigator had a good faith basis to believe that Judge Mountain properly found probable cause and had lawfully issued the warrant. The record shows the investigator was sworn and related details including the activities of a confidential informant in making drug purchases at the Friel/Kohl residence. It details the efforts made by the investigator to corroborate the informant's information through police surveillance including observations of the presence of known drug users. The application was considered by Judge Mountain in his chambers. Defendants do not contend Judge Mountain was without authority to issue the warrant. Upon this record, there is no basis to find the applicant lacked, as a reasonable police officer, a good faith belief in the existence of probable cause or that the court failed to act lawfully in considering and issuing the warrant. To sustain Defendants' arguments would require the court infer that the investigators fabricated the entire presentation to Judge Mountain. On the record presented to the court, there is no basis whatsoever for such a finding. Moreover, the issuing judicial officer is entitled to rely on the truthfulness of warrant applications made under oath in evaluating the likely existence of an undisclosed informant. *See Franks, supra,* at 171, 98 S.Ct. 2674. ("There is a presumption of validity with respect to the affidavit supporting the search warrant"). Thus, the prerequisites for application of the *Leon* good faith exception are present and Defendants' motions should be DENIED as to this issue.

### 3. Suppression of Interception of Electronic Communications

■ On October 8, 1996, Hon. William M. Skretny issued, pursuant to 18 U.S.C. § 2518, an order ("the Intercept Order") authorizing the interception of electronic communications to a digital display pager bearing number (716) 443–7066, the subscriber of which is Defendant Wiggins. An affidavit by Agent McGill was submitted in support of the application.[15] Defendants Wiggins and Donald Benjamin contend that there was insufficient probable cause to support the Intercept Order. Defendant Wiggins's Notice of Motion (Doc. # 94), filed November 14, 1997 ("Defendant Wiggins's Notice of Motion"), ¶ 38; Doyle Affidavit, ¶ 25. The original Intercept Order was extended on November 6, 1996, December 5, 1996, January 3, 1997, February 5, 1997, and March 14, 1997. Defendant Benjamin also argues the Intercept Order is invalid as it was obtained without the authorization from the United States Department of Justice required under 18 U.S.C. § 2516 and that the information obtained under the Intercept Order was not promptly sealed in violation of 18 U.S.C. § 2518(8)(a). Doyle Affidavit, ¶ 24(d) and (f). Both Wiggins and Benjamin maintain that the Intercept Order violated 18 U.S.C. § 2518(5) as the intercepting officers did not minimize the intercepted calls to the pager. Defendant Wiggins's Notice of Motion, ¶ 39–40; Doyle Affidavit, ¶ 24(e).

The Government contends only Defendant Wiggins has standing to challenge the Intercept Order. Government's Response, ¶ 49. The Government therefore has not addressed the merits of Defendant Benjamin's arguments in support of suppression.

As a threshold matter, the court determines whether Defendant Donald Benjamin has standing to challenge the Intercept Order. Defendant Benjamin asserts standing as an "aggrieved person" under

15. A copy of the affidavit of DEA Special Agent James M. McGill submitted in support of the application for an intercept order ("Intercept Affidavit"), is attached as Exhibit C to Defendant Wilson's Notice of Motion (Doc. # 118), filed December 12, 1997.

18 U.S.C. § 2518(10)(a) because he was allegedly a party to the taped conversations and communications. Defendant Benjamin's Notice of Motion, ¶ 39, 18 U.S.C. § 2518(10)(a) defines an aggrieved person as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." *Compare United States v. Fury*, 554 F.2d 522, 525–26 (2d Cir.), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977)("a person who was not named in the wiretap order and was not a party to any conversation intercepted during that tap is not an 'aggrieved person' and may not move to suppress information derived from it"). As relevant, the Intercept Order states

a. there is probable cause to believe that Donald BENJAMIN aka Ducky and Carlos WIGGINS aka Los have committed, are committing, and will continue to commit violations of Title 21, United States Code, Sections 841(a)(1) and 846;

b. there is probable cause to believe that particular electronic communications of Donald BENJAMIN aka Ducky and Carlos WIGGINS aka Los concerning the above-described offenses will be obtained through the interception for which authorization is herein applied. In particular, there is probable cause to believe that the communications to be intercepted will concern the telephone numbers of associates of Donald BENJAMIN aka Ducky and Carlos WIGGINS aka Los and the dates, times, and place for commission of the aforementioned federal felony offenses when Donald BENJAMIN aka Ducky and Carlos WIGGINS aka Los communicate with

their co-conspirators, aiders and abettors and other participants in the conspiracy, thereby identifying the co-conspirators and others as yet unknown, and their places of operation. In addition, these communications are expected to constitute admissible evidence in the above-described offenses.

Intercept Order, ¶ a and b.

In the instant case, Defendant Donald Benjamin is specifically named in the Intercept Order issued by Judge Skretny on October 8, 1996. Additionally, the Affidavit in Support of Application dated March 14, 1997, for the continued interception of electronic communications occurring over Wiggins's digital display pager, states that Donald Benjamin was believed to be using the pager to communicate with Defendants Wiggins and Brown in furtherance of the narcotics trafficking conspiracy. Affidavit in Support of Application for Continued Interception of Electronics Communication, dated March 14, 1997, ¶ 4(c).[16] As such, the court finds Defendant Donald Benjamin has standing to challenge the Intercept Order. Therefore, the court will address Benjamin's arguments for suppression.

### a. *Probable Cause*

 The same standard for assessing probable cause governs an application to intercept electronic communications over a digital display pager as for a wiretap or eavesdropping warrant issued pursuant to 18 U.S.C. § 2518. *United States v. Rodriguez*, 968 F.2d 130, 135 (2d Cir. 1992), *cert. denied*, 506 U.S. 847, 113 S.Ct. 139, 121 L.Ed.2d 92 (1992).[17] Additionally,

**16.** A copy of the Affidavit in Support of Application for Continued Interception of Electronic Communications, dated March 14, 1997, is attached as Exhibit D to Defendant Wilson's Notice of Motion (Doc. # 118), filed December 12, 1997.

**17.** The term "interception" is defined as "the aural *or other* acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical

or other device." 18 U.S.C. § 2510(4)( emphasis added). Further, the phrase "or other" was inserted into the definition of "interception" as "part of a modernization of Title III [18 U.S.C. § 2510, *et seq.*] to ensure privacy protection for new forms of communication such as electronic pagers, electronic mail, and computer-to-computer communications." *United States v. Rodriguez*, 968 F.2d 130, 136 (2d Cir.1992), *cert. denied.* 506 U.S.

it is well-settled that the standard for assessing probable cause for an eavesdropping warrant is no different from that of a search warrant. *United States v. Fury, supra.* at 530. In determining whether probable cause for an eavesdropping warrant exists, the issuing officer is simply to make a practical, common sense decision whether, given the "totality of the circumstances" set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that evidence of a crime will be obtained through the use of electronic surveillance. *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Jones v. United States, supra,* at 271, 80 S.Ct. 725. An affidavit in support of an application for an eavesdropping warrant demonstrates probable cause when it sets forth facts which are sufficient, under the circumstances, to indicate a fair probability of criminal activity. *United States v. Rowell,* 903 F.2d 899, 902 (2d Cir.1990), citing *Gates, supra,* at 236, 103 S.Ct. 2317. Further, a judge's determination of probable cause should be given great deference by a reviewing court. *Gates, supra,* at 236, 103 S.Ct. 2317; *United States v. Nichols,* 912 F.2d 598, 602 (2d Cir.1990). The resolution of marginal cases should be determined by the preference accorded to warrants. *Jones, supra,* at 270, 80 S.Ct. 725.

 A finding of probable cause may be based, in whole or in part, on hearsay from a reliable informant. *Gates, supra,* at 243–46, 103 S.Ct. 2317; *United States v. Smith,* 9 F.3d 1007, 1013 (2d Cir.1993). An inquiry into the reliability of an informant is usually of two general types: (1) an inquiry into the informant's veracity, and (2) an inquiry into the quality of the informant's source of knowledge, such as whether the information is based on first hand observations, as opposed to rumor or innuendo. *United States v. Wagner,* 989 F.2d 69, 72–73 (2d Cir.1993).

847, 113 S.Ct. 139, 121 L.Ed.2d 92 (1992)(citing S.Rep. No. 99–541, 99th Cong., 2d Sess.,

In assessing a probable cause determination, "[t]he only questions for the Court are whether the [affiant's] reliance on that informant was reasonable, and whether the Magistrate was fully informed of all necessary facts when she made her finding of probable cause for the issuance" of the warrant. *Smith, supra.*

 In the instant case, the statements of the Intercept Affidavit establish probable cause for the issuance of the Intercept Order. Specifically, statements within the affidavit recount that a DEA investigation had determined that Defendant Benjamin was involved in a drug trafficking operation in which varying amounts of crack cocaine were distributed in the Olean, New York area. Intercept Affidavit, ¶ 6. According to the affidavit, Benjamin was also known to engage in various acts of violence and intimidation against witnesses to hinder law enforcement investigations into his activities. *Id.* On October 2, 1996, Agent McGill received information from an investigator with the New York Police Department concerning recent drug distribution activities of Defendant Benjamin. *Id.,* ¶ 7. Specifically, a confidential source provided accurate and reliable information that Defendant Benjamin was responsible for a specified quantity of crack cocaine seized by the Olean Police Department on July 26, 1996. *Id.,* ¶ 7. Additionally, Benjamin was known to frequently contact a pager bearing telephone number (716) 443–7066 subsequent to which he would receive an incoming telephone call from an individual known only as "Los." *Id.* The ensuing conversations consisted of arrangements to meet and obtain drugs. *Id.* The confidential informant also provided information that Defendant Benjamin had recently moved to 271 Bird Avenue, Buffalo, New York, to avoid increased police attention focused on his activities in the Olean area. Physical surveillance showed that a vehicle registered to Defendant Donald Benjamin

reprinted in 1986 U.S.Code Cong. & Admin. News 3555, 3555–57, 3562–65, 3567).

was present at the Bird Avenue address on October 2 and 3, 1996. *Id*, ¶ 7.

Agent McGill determined that the telephone number (716) 443–7066 was leased though CUI Paging, of Buffalo, New York to a digital display pager subscribed to by Defendant Wiggins, residing at 31 Worchester, Buffalo, New York. *Id.,* ¶ 8. Agent McGill stated that he was aware that Wiggins, also known as "Los," was the subject of an independent DEA investigation concerning cocaine distribution activities on the eastside of Buffalo. *Id.,* ¶ 9. According to the confidential informant, Wiggins was the source for one half of an ounce of cocaine seized by the Southern Tier Drug Task Force in Jamestown, New York, on July 11, 1996. *Id.* Additionally, a search of criminal records databases revealed that Wiggins has an extensive criminal record including a prior drug charge on April 18, 1990 to which Wiggins had pled guilty. *Id.,* at ¶ 10. The affidavit further revealed that Wiggins had been arrested on September 19, 1996 on several motor vehicle and traffic violations at which time Wiggins gave 31 Worchester, Buffalo, New York as his address. *Id.,* ¶ 10.

The court finds that the statements contained within the Intercept Affidavit establish probable cause to support issuance of the Intercept Order. Much of the information provided by the confidential informant was independently corroborated by first-hand observations including the fact that Defendant Benjamin had moved to Bird Avenue in Buffalo from Olean, that Defendant Wiggins was known by the name "Los," the same name which the confidential informant attributed to the person from whom Benjamin would receive a telephone call subsequent to Benjamin's page of the telephone number to which Wiggins subscribed, and that Wiggins had admitted to living at 31 Worchester, in Buffalo. The fact that the informant knew that Benjamin had recently taken up residence at the Bird Avenue address when corroborated by the agents by the presence of his private auto establishes that the informant was in a position to know intimate personal details about Benjamin's personal affairs, thereby providing a reasonable basis to credit his statements concerning Benjamin's narcotics trafficking activities. *See Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)(upholding probable cause determination where detailed information provided by reliable informant, that a defendant, who was unknown to agent, would alight from a certain train on either of two days, wearing certain clothing, and carrying a tan zipper bag, and would be walking fast, and carrying narcotics, was corroborated by agent who observed defendant who matched the description); *Wagner, supra,* at 73 (upholding probable cause determination where confidential informant provided detailed account of various activities witnessed inside defendant's home).

A reasonably prudent person reviewing this information could conclude that criminality, specifically, narcotics trafficking involving Benjamin and Wilson, was being facilitated through the use of the targeted electronic display pager. Accordingly, the Intercept Order issued upon probable cause. Alternatively, the agent had a good faith belief that Judge Skretny properly issued the warrant upon probable cause. *United States v. Leon, supra.* Based on the foregoing, Defendants Benjamin's and Wiggins's motions to suppress on this ground should be DENIED.

### b. *Normal Investigative Techniques*

■ Defendants further contend that the necessity for the Intercept Order because other investigative procedures were unlikely to succeed was not demonstrated. Doyie Affidavit, ¶ 26. 18 U.S.C. § 2518(3)(c) provides that an application for an electronic intercept order must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear unlikely to succeed if tried or to be too dangerous." The

purpose of this requirement is not to render electronic surveillance an investigative tool of last resort, but to apprise the judicial officer of the progress of the investigation and the difficulties inherent in the use of normal investigative techniques. *United States v. Torres*, 901 F.2d 205, 231 (2d Cir.1990 ). The requirement must be construed in a practical, common sense and realistic fashion. *See United States v. Ivic*, 700 F.2d 51, 57 (2d Cir.1983); *United States v. Steinberg*, 525 F.2d 1126, 1130 (2d Cir.1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976). The statute does not require that all possible techniques be tried before a wiretap may be authorized, but, rather, "[a]n affidavit describing the standard techniques that have been tried and facts demonstrating why they are no longer effective is sufficient to support an eavesdropping order even if every possible means of the investigation has not been exhausted." *United States v. Terry*, 702 F.2d 299, 310 (2d Cir.), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983).

■ In the Intercept Affidavit, Agent McGill explained that, based on his training and experience as a special agent with the DEA, and the specific facts of the Benjamin investigation, McGill believed the interception of electronic communications was the only available technique reasonably likely to succeed in obtaining evidence necessary to prosecute Defendants Benjamin and Wiggins. Intercept Affidavit, ¶ 12. Additionally, McGill explained the normal investigative techniques which had been employed had failed. *Id.*, ¶ 13. Specifically, McGill stated that physical surveillance, grand jury subpoenas, confidential informants and cooperating sources, undercover police officers and agents, interviews with subjects or associates and search warrants had been used with limited success as the results of such investigative techniques required the agents to indulge in speculation on certain key factual questions concerning the conspiracy. *Id.* McGill further averred that

particular investigative techniques such as search warrants and subpoenas would only alert the co-conspirators they were under surveillance thereby frustrating the investigation. *Id.*

For example, while physical surveillance revealed evidence of meetings between alleged co-conspirators, it did not reveal the purpose of such meetings. *Id.*, ¶ 13. Additionally, the targets of the investigation had proven themselves to be "extremely surveillance conscious" causing the investigators to avoid prolonged physical surveillance. *Id.* The agent further stated that although confidential informants and cooperating sources had been developed and were regularly used in the investigation, such sources were unable to identify all the co-conspirators or all the conspiracy cocaine supply sources. *Id.* Attempts by undercover police officers and agents to infiltrate the inner workings of the conspiracy were of limited success based on the close and secretive nature of the conspiracy organization. *Id.* Additionally, undercover and controlled purchases of narcotics had not proven successful in identifying the scope of the conspiracy activities. *Id.* McGill further averred that interviews with subjects or associates of the conspiracy would not produce anything more than partially correct information thereby frustrating the investigation and alerting the rest of the conspiracy members to the investigation. *Id.* McGill also averred that search warrants and grand jury subpoenas would likely compromise the investigation by causing the conspirators to take further measures to insulate themselves from discovery. *Id.* Finally, at the time of the application, the agents had not developed probable cause to support issuance of warrants for specific premises. *Id.*

It is apparent that the interception of electronic communications between the conspirators was necessary to obtain evidence of the extent of the conspiracy as based on McGill's statements alternative investigative techniques would not have

been productive at the point when the application was made. Accordingly, Defendants' motions to suppress on the basis that normal investigative techniques had not been followed prior to application for the Intercept Order should be DENIED.

### c. Statutorily Required Approval from the Department of Justice

■ Defendants assert that the Intercept Order application had not been properly authorized by an officer of the United States Department of Justice as required by 18 U.S.C. § 2516. Doyle Affidavit, ¶ 24(d). The record establishes that Thomas S. Duskiewicz, Assistant United States Attorney authorized the Intercept Order. *See* Intercept Order Application, at 1.

An order for interception of wire, oral or electronic communications must be authorized by the proper authority. 18 U.S.C. § 2516. With regard to the investigation of specific federal crimes identified in the statute, an application for issuance of such an order requires authorization by the Attorney General, Deputy Attorney General, Associate Attorney General, or an Assistant Attorney General in the Criminal Division of the Department of Justice designated by the Attorney General for this purpose. 18 U.S.C. § 2516(1). However, a narcotics trafficking conspiracy violation, prohibited under Title 21 of the United States Code, is not among the crimes specifically enumerated in § 2516 which require such authorization. Instead, the authorization of a electronic communications intercept order in connection with the investigation of such a conspiracy is governed by 18 U.S.C. § 2516(3) which provides

> [a]ny attorney for the Government (as such term is defined for the purposes of the Federal Rules of Criminal Procedure) may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant, in conformity with section 2518 of this title an order authorizing or approving the in-

terception *of electronic communications* by an investigative or law enforcement officer having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of *any Federal felony.*

18 U.S.C. § 2516(3)(emphasis added).

A wireless pager, except for the one limited to emitting a sound ("tone-only"), and capable of having its data intercepted, as defined by 18 U.S.C. § 2510(4), is considered as part of an electronic communications system under 18 U.S.C. § 2510(12) and (14). *Brown v. Waddell,* 50 F.3d 285, 289 (4th Cir.1995). Accordingly, the authorization of the application for the Intercept Order for the Wiggins pager by Assistant United States Attorney Duskiewicz was in compliance with applicable law, and suppression of evidence obtained in connection with such order on that ground should be DENIED.

### d. Sealing of Intercepted Communications

■ Defendant Benjamin argues that the intercepted communications should be suppressed based on the Government's failure to promptly seal them. Doyle Affidavit, ¶ 24(f). The Government has not responded to this contention.

Taped recordings of the contents of oral, wire or electronic communications obtained pursuant to an Intercept Order are required to be sealed upon the expiration of the order to protect against editing of other alteration of such recording. 18 U.S.C. § 2518(8)(a). Further, derivative use of the contents of untimely sealed recordings under § 2517(3) which governs disclosure "while giving testimony," by any person who has received information pursuant to a properly issued order is prohibited. 18 U.S.C. § 2518(8)(a).

The only tape recording of any communication identified in the instant case is a conversation between Defendant Donald Benjamin and an undercover government

agent which the Government maintains, and Defendant Benjamin does not dispute, was recorded with the agent's consent. As that conversation was not recorded pursuant to an order, issued under 18 U.S.C. § 2510, *et seq.*, the sealing requirements of § 2518(8)(a) do not apply. Accordingly, Defendants' motion to suppress the taped recorded conversation on this ground should be DENIED.

### e. *Minimization of Intercepted Communications*

 Defendants assert that the Intercept Order was overly broad and authorized the interception of communications beyond the scope authorized by law and failed to minimize the interceptions of legal communications as required by 18 U.S.C. § 2518(5). Defendant Wiggins's Notice of Motion, ¶ 39; Defendant Benjamin's Notice of Motions, ¶ 24(e). Such arguments are without merit. Paging devices, insofar as they reveal only numeric messages, but not the content of the communication, are similar to pen registers permitted under 18 U.S.C. § 3127(3). *Waddell, supra,* at 293 n. 10; *United States v. Tutino,* 883 F.2d 1125, 1141 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *United States v. Reyes,* 922 F.Supp. 818, 837 n. 20 (S.D.N.Y.1996); *United States v. Gambino,* 1995 WL 453318, *4 (S.D.N.Y.1995). As such, the minimization requirements of 18 U.S.C. § 2518(5) do not apply. *Tutino, supra; Gambino, supra.* Accordingly, no minimization hearing is necessary and the request for such hearing and suppression on that ground should be DENIED.

### f. *Failure to Comply with the Court's Requirement for Filing of Progress Reports*

Defendant Donald Benjamin also argues that the Intercept Order's requirement that the Government provide the court with progress reports regarding the need for continued interception on or about the tenth and twentieth days following the date of the Intercept Orders was violated and therefore requires suppression. Doyle Affidavit, ¶ 36.

 Defendant Benjamin fails to point to anything in the record to support this assertion. In fact, the record indicates that ten-day progress reports were submitted with regard to the original Intercept Order as well as the five extensions. *See* Exhibit D to Defendant Wilson's Notice of Motion (Doc. # 118), filed December 12, 1997, ¶ 5. Moreover, even if the progress reports were not timely filed, the appropriate sanction for such failure is not suppression of the evidence obtained pursuant to the intercept Order. *United States v. Scafidi,* 564 F.2d 633, 641 (2d Cir.1977), *cert. denied,* 436 U.S. 903, 98 S.Ct. 2231, 56 L.Ed.2d 400 (1978) (denying defendant's motion to suppress tape recorded conversations on the basis that progress reports which were to be filed every fifteen days were filed up to two weeks late or not at all). Instead, it is within the court's discretion to determine whether, based on the absence of such reports, to continue the intercept orders. *Scafidi, supra.* Here, as the Intercept Order was continued on five separate occasions, it must be presumed that, even if the progress reports were not filed or were untimely, Judge Skretny did not find such reports necessary to permit the extensions of the Intercept Order as requested. Defendants Benjamin's motion to suppress on this ground should, accordingly, be DENIED.

### 4. *Recorded Telephone Conversations and Video Tapes*

#### a. *Consensually Recorded Conversation*

 Defendant Benjamin also moves to suppress a tape recorded conversation between himself and a government agent acting in an undercover capacity. Benjamin contends that this conversation is subject to the requirements of 18 U.S.C. § 2510 *et seq.,* and, as such, must be sup-

pressed for the same reasons that the Intercept Order was statutorily deficient. Doyie Affidavit, ¶¶ 22, 24, 25. The Government maintains that the telephone call Defendant Benjamin seeks to suppress was a consensually recorded conversation and is therefore exempt from the requirements of a court approved intercept order under 18 U.S.C. § 2518. Government's Response at 9.

Defendant Benjamin has not responded to the Government's position and the court's research of the record of proceedings in this matter does not indicate that any wiretap authorization permitting the Government to intercept Defendant's telephone calls was obtained. However, as it is not disputed that the telephone conversation which Defendant Benjamin seeks to suppress between Benjamin and an undercover government agent was with the agent's consent, Defendant's motion is without merit.

No warrant is required to intercept a private conversation where at least one of the parties to the conversation has consented to its recording. 18 U.S.C. § 2511(2)(c) (interception of telephone conversations not prohibited where one of the parties to the communication has consented). Additionally, a defendant's expectations that he is conversing with an apparently trustworthy person "are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities." *United States v. White*, 401 U.S. 745, 749, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *accord, United States v. Chin*, 934 F.2d 393, 399 (2d Cir. 1991). It makes no difference whether the government agent conceals his identity prior to holding a conversation with a defendant, the contents of which he later writes down from memory, or whether the agent instantaneously records the contents of such conversations through electronic recording devices. *White, supra.* In either case, no warrant is required. Accordingly, there is no basis for suppres-

sion of the telephone conversation at issue on this ground.

Defendant Wiggins moves to suppress recordings of alleged conversations and video tapes made of meetings between Wiggins and a government agent on the basis that such recordings and video tapes were made without Wiggins having been advised of his Miranda rights. Defendant Wiggins's Notice of Motion, ¶¶ 29–32. However, Miranda warnings protect against self-incriminating statements which are compelled. *New York v. Quarles*, 467 U.S. 649, 654, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). *Miranda's* requirements were established because custodial interrogation is considered inherently coercive. *Quarles, supra.* Accordingly, such warnings are necessary only when the defendant is both in custody and subject to interrogation. *United States v. Morales*, 834 F.2d 35, 38 (2d Cir.1987).

In the instant case, Defendant Wiggins has not established that he was in custody when the incriminating statements or video tapes which he now seeks to suppress were made or that he had invoked his right not to be questioned outside the presence of counsel. *United States v. Kirsh*, 54 F.3d 1062, 1066 (2d Cir.), *cert. denied*, 516 U.S. 927, 116 S.Ct. 330, 133 L.Ed.2d 230 (1995)(upholding district court's denial of motion to suppress unwarned statement where defendant "failed to establish that when she made the statements she was in custody or that she had invoked her right not to be questioned except in the presence of her counsel") Accordingly, Wiggins's motion on this ground should be DENIED..

### b. *Hammad Violation*

■ Defendant Donald Benjamin also seeks to suppress the tape recorded telephone conversation between himself and the undercover agent on the basis that at the time of the conversation, Benjamin was represented by legal counsel on state criminal charges involving the same alleged

acts as those alleged· in the indictment.[18] Doyle Affidavit, ¶ 44. As such, Defendant Benjamin argues that the Government's attorneys violated Disciplinary Rule 7–104(A)(1) of the Code of Professional Responsibility ("DR 7–104(A)(1)"). As adopted in New York State. DR 7–104(A)(1) provides that

> [d]uring the course of his representation of a client, a lawyer shall not ... [c]ommunicate or cause another to communicate on the subject of the representation with the party he knows to be represented by a lawyer on that matter unless he has the prior consent of the lawyer representing such other party *or is authorized by law to do so.*

New York Judiciary Law, Appendix, at p. 350 (McKinney 1992)(emphasis added). DR 7–104(A)(1) is applicable to attorneys admitted to practice in New York state courts and in this court. Local Rules of Civil Procedure for the Western District of New York 83.3.

The Second Circuit has held that DR 7–104(A)(1) is applicable to Assistant United States Attorneys in criminal prosecutions, including the investigation phase. *United States v. Hammad,* 858 F.2d 834, 837–38 (2d Cir.1988), *cert. denied,* 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990). In *Hammad* a sharn subpoena issued by an Assistant United States Attorney was used by an informant who then met with a represented suspect and recorded their conversation. The falsely issued subpoena was held by the Second Circuit to have created the "pretense that might help the informant elicit admissions from a represented suspect." *Hammad, supra,* at 840. The court found that such investigative techniques "contributed to the informant's becoming the alter ego of the prosecutor" in violation of DR 7–104(A)(1). *Hammad, supra.*

However, under the "authorized by law" exception provided in DR 7–104(A)(1), a prosecutor is permitted to "employ legitimate investigative techniques in conducting or supervising criminal investigations, and the use of informants to gather evidence against a suspect will frequently fall within the ambit of such authorizations." *Hammad, supra,* at 838. The use of an undisclosed informant acting at the direction of the Government is an activity "authorized by law" and thus is exempt from DR 7–104(A)(1) regardless of whether the target is represented, absent a determination that the conduct is improper, ethically or otherwise, so as to place such conduct outside the "authorized by law" exception. *United States v. Scozzafava,* 833 F.Supp. 203, 210 (W.D.N.Y.1993)("In the absence of misconduct, similar to that by the prosecutor in *Hammad,* which exceeds the lawful authority of the government attorney, no violation of DR 7–104(A)(1) occurs where a prosecutor proposes the wiring of an informant for the purpose of recording conversations with a represented target of a criminal investigation, or even suggests the topics to be discussed, such actions being inherent in the exercise of the government attorney's authority to investigate effectively and prosecute crimes.")

Here, Benjamin points to no evidence of professional misconduct by the Government attorney responsible for the investigation and the record reveals none. Specifically, there is no indication that the taping of the telephone conversation between Benjamin and an undercover agent, even if instigated by the Government's attorney, was an attempt by the prosecution to learn defense strategies or tactics or to otherwise interfere with Benjamin's attorney's ability to provide an effective defense

---

**18.** The court notes that Defendant Benjamin has not asserted that the taped telephone conversation between Benjamin and a government agent was made at the direction of any government attorney, nor has Benjamin requested a hearing on the issue. As such,

Benjamin has not demonstrated a factual basis to support a *Hammad* violation. However, in the interest on completeness, the court assumes for the sake of this Discussion that such facts were articulated and addresses the issue as an alternative finding.

in the unrelated state case. *See Scozzafava, supra,* at 210. As such, the prosecutor's conduct in causing the consensual recording to be made, even if it occurred, is within the holding of *Hammad,* and DR 7–104(A)(1) was not contravened. Suppression of the recorded telephone conversation on this ground should therefore be DENIED.

### CONCLUSION

Based on the foregoing, the Defendants' motions to dismiss the indictment should be DENIED; Defendants' motions to suppress evidence seized pursuant to the search warrants should be DENIED; Defendant Kohl's motion for a *Franks* hearing should be DENIED; Defendants Wiggins's and Benjamin's motions to suppress evidence seized pursuant to the Intercept Order should be DENIED; Defendant Wiggins's motion to suppress tape recorded and video-taped conversations with a government agent should be DENIED; and Defendant Benjamin's motion to suppress statements made to an undercover agent should be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Government and the Defendant.

SO ORDERED.